**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dean A. SANTANA, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 4, 2008.

Filed Oct. 17, 2008.

David J. Long, Public Defender, Reading for appellant.

Jason R. Antoine, Assistant District Attorney, Reading for Commonwealth, appellee.

BEFORE: STEVENS, FREEDBERG, and POPOVICH, JJ.

OPINION BY FREEDBERG, J.:

¶ 1 This is an appeal from judgment of sentence entered by the Court of Common Pleas of Berks County after a bench trial in which Appellant, Dean A. Santana, was convicted and sentenced on charges of escape, simple assault and resisting arrest.[1] In this appeal, Appellant challenges the sufficiency of evidence upon which he was convicted of escape. We affirm judgment of sentence.

¶ 2 The facts are not in dispute. On July 30, 2007, members of the Reading Police Department received information that Appellant was involved in a burglary and theft of firearms in another jurisdiction. (Notes of Testimony, January 9, 2008, p. 9) ("N.T."). Appellant was also wanted on a state parole violation for a 2006 felony conviction. There was no arrest warrant for the burglary and theft crimes, but there was a warrant to commit and detain in connection with the parole matter. N.T. at 15, 45–46, 52.

¶ 3 Appellant was believed to be at 530 South 17th and½ Street, Reading, Berks County, Pennsylvania. Id. at 9. The police proceeded to that location. Id. Upon arrival, several officers proceeded to the front of the residence while others stationed themselves at the rear. Id. Officer Melissa Sellarts of the Mohnton Police Department initiated a conversation with people inside the residence. Id. at 9–10. During this conversation, officers located at the rear of the building observed someone on the roof. Id. at 10. Two officers proceeded to the roof-top level of the building, identified the person as Appellant and engaged him to come in from the roof. Id. at 10–11. Appellant did not come in, rather he jumped from the roof down to the rear of the residence. Id. at 11.

¶ 4 Criminal Investigator Randy Organtini had positioned himself at the rear of the residence. Id. at 19. Investigator Organtini was wearing a bulletproof vest emblazoned with POLICE in gold on its front. Id. at 20. Investigator Organtini was also wearing a service belt which displayed his badge, firearm and handcuffs. Id. Investigator Organtini observed Appellant jump from the roof and run toward him at the rear of the yard. Id. at 19. Investigator Organtini yelled at Appellant to stop. Id. at 20. Appellant "stiff-armed" Investigator Organtini out of his way. Id. As a result, Investigator Organtini sustained minor injuries. Id. at 21.

¶ 5 Officer Christian Rothermel was stationed in an alleyway behind the residence. Id. at 53. Officer Rothermel was dressed in full uniform. Id. Officer Rothermel observed Appellant jump from the roof and "stiff-arm" Investigator Organtini. Id. at 54–55. Thereafter, Officer Rothermel began to chase Appellant. Id. at 56. From a distance of approximately fifteen feet, Officer Rothermel yelled at Appellant to stop and yelled that he was under arrest. Id. When Appellant did not stop, Officer

1. The trial court directed Appellant to file a concise statement of errors complained of on appeal on January 23, 2008. Appellant filed a timely statement on February 8, 2008. The court filed a 1925(a) Opinion on March 19, 2008.

Rothermel fired a taser at Appellant, but missed. He pursued Appellant on foot and fired at Appellant a second time with the taser. *Id.* Appellant was stunned and taken into custody. *Id.*

¶ 6 Appellant raises the following issue on appeal:

Whether the evidence was insufficient to establish that Appellant was guilty of escape where there was insufficient evidence to establish that Appellant was in official detention to the extent he could thereafter unlawfully remove himself pursuant to 18 Pa.C.S.A. § 5121(a), (e)

Appellant's Brief, p. 5; *see also* Appellant's Concise Statement of the Errors Complained of on Appeal ("1. The evidence was insufficient to establish that the appellant was guilty of Escape.").[2]

■ ¶ 7 When presented with a claim challenging the sufficiency of the evidence,

We must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crime charged was established beyond a reasonable doubt.

*Commonwealth v. Stewart,* 436 Pa.Super. 626, 648 A.2d 797 (1994), *citing Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229, 1230 (1992); *Commonwealth v. Swann,* 431 Pa.Super. 125, 635 A.2d 1103 (1994).

¶ 8 A person commits the offense of escape "if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." 18 Pa.C.S.A. § 5121(a). Official detention is defined to mean:

[A]rrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S.A. § 5121(e).

■ ¶ 9 Appellant was not in police custody, nor was he detained in a facility. Therefore, the question is whether the phrase "any other detention for law enforcement purposes" applies to the facts of this case. Previously, we have interpreted this phrase to mean a seizure in which "the police have restrained the liberty of a person by show of authority or physical force." *Stewart,* 648 A.2d at 798. Any determination as to whether a seizure occurred is based upon the totality of circumstances and "whether a reasonable person would have believed he or she was free to leave." *Id.; see also Commonwealth v. Woody,* 939 A.2d 359 (Pa.Super.2007); *Commonwealth v. Colon,* 719 A.2d 1099 (Pa.Super.1998).

¶ 10 Appellant contends that the facts here are analogous to those found in *Woody, supra,* and asks this Court to similarly conclude that there was no detention of Appellant. In *Woody,* an officer in a patrol car witnessed the appellant commit a minor traffic violation. The officer activated his emergency lights and siren to initiate a traffic stop. The appellant refused to stop. Eventually, the appellant abandoned his car and attempted to elude the officer on foot. From his patrol car, the officer yelled at the appellant to stop. The appellant refused. The officer chased

---

**2.** Appellant had also contended that the trial court abused its discretion in sentencing Appellant to consecutive terms of incarceration. However, in his Brief to this Court, Appellant concedes that this contention is without merit. *See* Appellant's Brief, p. 5 n. 1.

the appellant on foot and eventually took the appellant into custody. On appeal, a panel of this Court vacated the appellant's conviction of escape, concluding:

> [T]he charge of escape was based entirely on [appellant's] failure to comply with [the officer's] instructions to stop and get on the ground, which were uttered by the officer from his vehicle when [appellant] exited his own vehicle to flee on foot. At no time was [appellant] actually detained by the officer; indeed, the facts suggest exactly the opposite.

*Woody*, 939 A.2d at 363.

¶ 11 In our view, the facts present in this case more closely parallel those found in *Commonwealth v. Colon, supra.* There, two officers approached the appellant, informed him that they had a warrant for his arrest and that he was under arrest. The appellant fled, was eventually taken into custody and charged with escape. On appeal, this Court found the warrant to be significant.

> It is the warrant which extends the power of the state over the defendant, beyond the mere assertion he is under arrest, and completes the required element of official detention necessary to constitute the crime of escape.

*Colon*, 719 A.2d at 1101.

¶ 12 Here, there was a warrant to detain Appellant for a state parole violation. Police officers in full uniform had completely surrounded the residence at which Appellant was located. Appellant was told repeatedly to stop running and to speak with the police. Officer Rothermel witnessed Appellant assault Investigator Organtini. Officer Rothermel informed Appellant that he was under arrest. When Appellant refused to comply, Officer Rothermel drew and fired a taser gun at Appellant. Viewing these facts in a light most favorable to the Commonwealth, we find that the trial court had sufficient evidence upon which to conclude that Officer Rothermel had restrained the liberty of Appellant, both by show of authority and physical force. Moreover, we agree with the trial court that no reasonable person could believe he was free to leave under the circumstances. We affirm.