J-S33043-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSHUA MOSHA HARDING, | : | |
| | : | |
| Appellant | : | No. 1373 MDA 2016 |

Appeal from the Judgment of Sentence April 29, 2016
in the Court of Common Pleas of York County,
Criminal Division, at No(s): CP-67-CR-0007614-2013

BEFORE:    BENDER, P.J.E., OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED JANUARY 11, 2018**

This case returns to this Court after we denied counsel's petition to withdraw and remanded it for the filing of an advocate's brief in ***Commonwealth v. Harding***, 2017 WL 3279392 (Pa. Super. 2017) (unpublished memorandum).  Counsel has complied and this case is now ripe for disposition.  Upon review, we affirm.

The factual and procedural history of this matter was summarized thoroughly in our prior memorandum.  Briefly, Appellant was convicted of possession with the intent to deliver a controlled substance, aggravated assault, escape, and simple assault after an interaction and altercation with Trooper James O'Shea and Officer Matthew Kile, who encountered Appellant when they entered an apartment with arrest warrants for Joseph Weaver and

_____

*Retired Senior Judge assigned to the Superior Court.

Holly Urban. Appellant was present at the apartment when the officers entered the residence.

Pertinent to the disposition of this case,

> [a]fter handcuffing Urban, O'Shea asked for Appellant's identification and name, but Appellant said nothing. Instead, Appellant stood and walked around the table. Suspecting that "something just wasn't right," O'Shea informed Appellant that he was going to handcuff him for safety reasons. [] O'Shea instructed Appellant to "put his hands behind his back." Meanwhile, Kile saw O'Shea interacting with Appellant and had heard their voices become heightened. During the trial, O'Shea testified that [Appellant] was not free to leave once O'Shea instructed Appellant about the handcuffs.
>
> On cross-examination, O'Shea testified that he remembered the clicking of handcuffs, but he did not visually remember if he had "put one handcuff on [Appellant]." According to O'Shea on direct examination, "I remember hearing the clicking of the handcuffs, at which point [Appellant] pulled away with his right arm and swung back around and struck me in the right side of my face."
>
> * * *
>
> Detective Kile also witnessed this event and provided additional testimony about this initial strike. Kile testified that before Kile could place Weaver into custody, he saw Appellant "swing -- lunge a closed fist at Trooper O'Shea." Specifically, Kile "observed [Appellant's] arm going towards Trooper O'Shea's head." When the Commonwealth asked Kile about if he had "observe[d] any part of [Appellant's] body or anything connected to [Appellant's] body make contact with Trooper O'Shea," Kile responded that "it would have been his hand hitting Trooper O'Shea's head. I saw Trooper O'Shea heading towards the ground."
>
> After Appellant struck O'Shea, Kile attempted to take Appellant's "legs out from underneath him to put him onto the ground so that he could successfully be placed into custody," but Appellant broke free of this attempt. Specifically, Kile and Appellant fell onto the kitchen table, and then onto the ground.

- 2 -

When both stood, Appellant was free. When the Commonwealth asked about whether Appellant "kick[ed] or push[ed] or in any way tr[ied] to push off [Kile] to get away," Kile responded that "it would have been pushing, like a wrestling match, kind of pushing me down to get up kind of thing." [] Kile's neck had minor scratches from the altercation. Then, Kile saw blood running down O'Shea's head.

\* \* \*

After the altercation, Kile placed Weaver into custody by handcuffing him and having him sit against the wall next to Urban, and then put handcuffs on Appellant, while he was lying down. Appellant, Weaver, and Urban were removed from the residence, and at no point were Appellant, Weaver or Urban left without police supervision inside the house. It should be noted though, for thoroughness[,] that Kile did not do a pat down of Urban or Weaver.

Trial Court Opinion, 10/18/2016, at 6-10.

Following a jury trial, Appellant was found guilty of the aforementioned crimes and sentenced soon thereafter. After the filing and denial of post-sentence motions, Appellant timely filed a notice of appeal. However, in this Court, in lieu of a brief in support of Appellant's appeal, counsel filed both an **Anders**[1] brief and a petition to withdraw as counsel.

Upon initial review, we agreed with counsel that Appellant's issues challenging the sufficiency of the evidence to sustain his convictions for possession with the intent to deliver a controlled substance, aggravated assault, and simple assault were frivolous. **Commonwealth v. Harding**, 2017 WL 3279392, at \*8. Moreover, we found Appellant had presented no

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

issue within his *pro se* response which convinced us to disturb his judgment of sentence. *Id.* However, because we identified a potentially non-frivolous issue in our independent review, we denied counsel's motion to withdraw and remanded the case for counsel to file an advocate's brief.[2] *Id.*

Specifically, this Court ordered counsel to file an advocate's brief on the issue of whether the evidence was sufficient to sustain Appellant's conviction for escape. *Id.* at 7. On November 3, 2017, counsel for Appellant filed an advocate's brief, and on December 4, 2017, the Commonwealth filed a response. We are now able to review this issue. We do so mindful of the following.

An individual commits the offense of escape when "he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." 18 Pa.C.S § 5121(a). "'[O]fficial detention' means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes[.]" 18 Pa.C.S § 5121(e).

> Previously, we have interpreted ["any other detention for law enforcement purposes"] to mean a seizure in which "the police have restrained the liberty of a person by show of authority or physical force." [***Commonwealth v. Stewart****,* 648 A.2d 797, 798 (Pa. Super. 1994)]. Any determination as to whether a seizure occurred is based upon the totality of circumstances and "whether

---

[2] In light of our finding of a potentially non-frivolous issue, we deferred our disposition of Appellant's issue concerning the weight of the evidence to sustain his convictions.

a reasonable person would have believed he or she was free to leave." *Id.*

*Commonwealth v. Santana*, 959 A.2d 450, 452 (Pa. Super. 2008).

Appellant concedes he was in official detention. Appellant's Brief at 12. Thus, we consider only whether Appellant's conduct constituted removing himself from said detention as contemplated by the statute. In his advocate's brief, Appellant cites several cases to support his contention that a conviction for escape will not stand

> unless the Commonwealth can show that the defendant committed a substantial deviation from official detention. In short, to prove the element of "remove" the Commonwealth must show the defendant substantially deviated from official detention. It stands to reason that a mere and minor deviation from official detention would be insufficient to be considered 'removal' from official detention for the purposes of escape.

*Id.* at 11 (citing *Commonwealth v. Hall*, 585 A.2d 1117 (Pa. Super. 1991) (finding insufficient evidence to sustain conviction for escape when Hall, while on work release, deviated from his normal route to work, but nonetheless returned to prison on time); *Commonwealth v. Edwards*, 595 A.2d 183 (Pa. Super. 1991) (holding Edwards did not remove himself from official detention and thus could not be convicted of escape when, on several occasions while on work release, Edwards was late returning to prison); and *Commonwealth v. Waugaman*, 167 A.3d 153 (Pa. Super. 2017) (finding sufficient evidence to sustain conviction of escape when Waugaman left prison as part of his work release program but failed to show up at work and went missing for three hours)).

Applying the foregoing case law, Appellant contends that

> none of the facts presented at trial present[s] evidence showing
> that he removed himself from detention. In fact, the evidence at
> trial shows the officers were never out of sight and the Appellant
> never broke free. Moreover, there was no testimony that []
> Appellant had managed to leave the apartment where the arrest
> took place. In the cases cited above, it is clear that removal from
> official detention requires some form of distance from the
> detention. In cases where the defendant left detention but
> returned this Honorable Court has found that there is no escape.
> In cases where a defendant has failed to identify their location and
> their whereabouts are unknown, this Honorable Court has found
> escape. Here, [] Appellant never put any distance between himself
> and the official detention. Moreover, he never broke free or ran
> from the initial arrest.

Appellant's Brief at 13.

In response, the Commonwealth correctly notes that the cases cited by

Appellant are factually distinguishable. Commonwealth's Brief at 14. Citing

to the facts as set forth *supra,* the Commonwealth contends the evidence

presented at trial was sufficient to sustain Appellant's conviction. ***Id.***

> These actions show that [Appellant] removed himself from official
> detention. While [Appellant] did not leave the premise, the
> escape statute does not require that the Commonwealth prove
> any particular temporal or geographical distance. Rather, the
> Commonwealth must prove that a defendant take himself out of
> official detention. By striking Trooper O'Shea so that the trooper
> no longer had [Appellant] within his custody, [Appellant] detached
> himself from official detention. Moreover, [Appellant's] successful
> efforts in avoiding Det. Kile further show [Appellant] removing
> himself from official detention.

***Id.*** at 15.

We agree. As set forth *supra*, an individual commits escape when he,

*inter alia*, removes himself from official detention. 18 Pa.C.S. § 5121(a). The

- 6 -

statute does not mandate that the removal must be for a certain period of time or a certain distance from the initial detention. Here, reviewing the evidence in light most favorable to the Commonwealth, Appellant committed the crime of escape when he removed himself from official detention by wrestling out of Officer O'Shea's grip and hitting Officer O'Shea in the head, resulting in the officer's falling to the floor. N.T., 3/14/2016 at 78, 103. Furthermore, the cases cited by Appellant are both factually dissimilar and fail to support his argument that there must be evidence of a substantial deviation from official detention in order to sustain a conviction for escape. In light of the foregoing, the evidence was sufficient to sustain Appellant's conviction. *See Commonwealth v. Bey*, 292 A.2d 519, 521 (Pa. Super. 1972) ("Any person who, being lawfully confined or in custody, regains his freedom, with or without force, before being lawfully discharged, is guilty of an escape[.]") (citation and quotation marks omitted).

Lastly, we address Appellant's challenge to the weight of the evidence to support his convictions. We begin with our well-settled standard of review.

> The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant. Our review on appeal is limited to determining whether the trial court abused its discretion in denying the motion for a new trial on this ground.

- 7 -

***Commonwealth v. Chamberlain,*** 30 A.3d 381, 396 (Pa. 2011) (citations omitted). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." ***Commonwealth v. Handfield***, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting ***Commonwealth v. Cain***, 29 A.3d 3, 6 (Pa. Super. 2011)).

> With respect to the verdict, the trial court set forth the following.
>
> [T]he evidence was sufficient to support the convictions, and there is no reasonable argument that the jury mis-weighed the evidence. It was within the jury's discretion whether to find the testimony of the witnesses credible. Therefore, the court will not disturb the jury's verdict.

Trial Court Opinion, 10/18/2016, at 24-25.

We discern no abuse of discretion in the trial court's conclusion. As the trial court correctly observed, it is within the province of the jury, sitting as fact-finder, to review the evidence and assess the credibility of the testifying witnesses. ***See Commonwealth v. Williams***, 854 A.2d 440, 445 (Pa. 2004) ("In criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact."). ***See also Commonwealth v. Hughes***, 908 A.2d 924, 928 (Pa. Super. 2006) ("[E]vidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability

of fact may be drawn from the combined circumstances."). Accordingly, Appellant's weight challenge fails*.*

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2018